NOT FOR PUBLICATION                          [Doc. No. 2,8]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

RITE AID OF NEW JERSEY, INC.,

           Petitioner,

      v.                          Civil Action
                                    11-00374(RMB/JS)

UNITED FOOD AND COMMERCIAL
WORKERS UNION, LOCAL 1360,           **OPINION**

          Respondent.

Appearances:
Andrew W. Allison, Esquire
Robert James Toy, Esquire
Post & Schell PC
Four Penn Center
1600 John F. Kennedy Boulevard
Philadelphia, PA 19103
    Attorneys for Petitioner

Martin William Milz, Esquire
Warren J. Borish, Esquire
Spear Wilderman, PC
230 South Broad Street
14th Floor
Philadelphia, PA 19102
    Attorneys for Respondent

BUMB, UNITED STATES DISTRICT JUDGE:

    This matter comes before the Court upon the motion of

Petitioner Rite Aid of New Jersey, Inc. ("Rite Aid") to vacate a

December 21, 2010 arbitration award (the "Award") in favor of

Respondent United Food and Commercial Workers Union, Local 1360

(the "Union") and upon the Union's cross motion to confirm the

1

award.[1]

For the reasons set forth below, Rite Aid's motion is DENIED and the Union's motion is GRANTED.

## I. Background

Between January 26, 1999 and July 26, 1999 National Labor Relations Board ("NLRB") elections were held, certifying the Union as the collective bargaining representative for non-management employees in four Rite Aid stores.

On November 1, 1999, the Union and Rite Aid entered into an oral agreement (the "Card Check Agreement") under which Rite Aid agreed to:

(1) voluntarily recognize the Union as the exclusive bargaining representative in every non-union store where the Union presented signed authorization cards evidencing that a majority of employees wished to be represented by the Union;

(2) grant the Union access to non-union stores for the purpose of organizing; and

(3) remain neutral during future organizing drives.

In exchange for these benefits, Rite Aid became a participating prescription provider in the Tri-State Health and Welfare Fund

---

[1] This Court has jurisdiction under 29 U.S.C. § 185 because Petitioner is an employer within the meaning of Section 2(2) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 152(2), the Union is a labor organization within the meaning of Section 2(5) of the LMRA, 29 U.S.C. § 152(5), and Rite Aid and the Union entered into a collective bargaining agreement ("CBA") in an industry affecting commerce within the meaning of Section 2(7) of the LMRA, 29 U.S.C. § 152(7).

("the Fund"), which covered Local 1360 members in New Jersey, and which had previously been closed to Rite Aid.  While there is no record of a written document memorializing the agreement, Rite Aid recognized its obligations under the Card Check Agreement in a memorandum issued by Rite Aid on November 1, 1999 (the "Memorandum").  In the Memorandum, Rite Aid acknowledged that there is "a special arrangement with the" Union under which Rite Aid "has agreed to recognize 'card checks' to see if associates in a store want to join the union."  The Memorandum reads in pertinent part:

> Rite Aid has a special arrangement with the UFCW Locals 1360, the union who represents some of our associates in New Jersey.  Rite Aid has agreed to recognize "card checks" to see if associates in a store want to join the union.  If the union has union cards signed by a majority of the hourly associates in a store, Rite Aid will recognize the union as representative of all the associates in that store.  We will not require that the union go through a "secret ballot election" like most unions have to do to be recognized.  As part of this arrangement, we have also agreed that Rite Aid will take a "neutral" approach to the union's organizing efforts.  What this means is that, although we are not encouraging anyone to join, we also will not discourage anyone from signing a card.

Petitioner's Ex.1.

Eight days later, on November 9, 1999, the Union and Rite Aid entered into a collective bargaining agreement (the "1999 CBA"), retroactively effective October 31, 1999, and terminating November 2, 2002.  Petitioner's Ex. 3 at ¶ 3.  The 1999 CBA contains the following clause:

ARTICLE 1 - RECOGNITION

3

> The Employer recognizes the Union as the exclusive representative of all employees except only store managers, assistant managers, pharmacists, pharmacy interns in its drugstores in Camden, New Jersey, store #843, or replacement stores, and to include all stores added to the union via [National Labor Relations Board] elections or other demonstration of the Union status acceptable to the Employer under the jurisdiction of United Food & Commercial Workers Union, Local 1360, now or hereafter owned and/or operated by the Employer, doing business as Rite Aid Corporation or otherwise and whether by the same or other person, partnerships, associations or corporations, and whether by concessionaires, licenses, or lessess.

See Petitioner's Ex. 3(A).

Following the adoption of the 1999 CBA, and consistent with the Card Check Agreement, Rite Aid recognized the Union as the collective bargaining representative for approximately sixty-three stores organized through card check between November 1999 and December 2002.

After the expiration of the 1999 CBA, on January 14, 2003, the parties met to begin negotiating a new collective bargaining agreement.  During the meeting, Rite Aid requested information concerning pharmacy use by retailers participating in the Tri-State Health and Welfare Fund to determine what, if any, benefit Rite Aid received in exchange for permitting Union recognition by card check.  Whether Rite Aid received this information remains in dispute.

The parties eventually entered into a second CBA (the "2002 CBA", retroactively effective as of November 3, 2002 and set to expire on November 5, 2005.  This 2002 CBA contained a nearly

4

identical recognition clause as the 1999 CBA.

In the four years that followed the negotiation, from 2003 to 2007, Rite Aid refused the Union's request to be recognized as the bargaining representative via the card check method six times, in each case requiring the Union to file for an NLRB election.

On March 1, 2007, the parties entered into a third CBA, retroactively effective November 6, 2005 through November 6, 2010 (the "2005 CBA"), which again contained essentially the same recognition clause as had been contained in the parties' earlier bargaining agreements. The 2005 CBA mandated arbitration of "[a]ll grievances or disputes arising during the term of [the 2005 CBA] concerning interpretation or application of the provisions of" the 2005 CBA. While the scope of dispute that may be brought before the arbitrator is broad, his power is more limited: the arbitrator does "not have the authority to amend, modify or in any manner change the" 2005 CBA. Petitioner's Ex. 3 at Ex. C.

On November 8, 2007, pursuant to the same arbitration provision, the Union submitted to arbitration a claim that Rite Aid had improperly refused to accept the card check method for Union recognition in contravention of the Card Check Agreement, the 2005 CBA, and past practice. After a hearing, arbitrator Richard Kasher(the "Arbitrator") issued a written opinion,

5

finding that:

> Whether one characterizes the November 1, 1999 memorandum as
> an "arrangement" or "agreement," in this Arbitrator's
> opinion there is no substantive difference.  There was a
> mutual commitment, a clear understanding and consideration.
> The parties, not this Arbitrator, amended and modified the
> terms of Article 1, the Recognition Clause.  The parties
> agreed that the Company would not exercise the option to
> insist upon an NLRB election when the Union presented a
> majority of authorization cards from the employees at a Rite
> Aid store.

Petitioner's Ex. 1.  The Arbitrator further found that neither

the adoption of subsequent CBAs, nor Rite Aid's refusal to honor

the Card Check Agreement, "vitiate[d]" the Card Check Agreement.

Id.  Accordingly, the Arbitrator sustained the Union's grievance

and ordered Rite Aid "to cease and desist from such violation and

comply with the terms of the neutrality/card check agreement."

Upon receipt of this decision, Rite Aid initiated this suit and

moved to vacate the Award.  The Union cross-moved for enforcement

of the Award.

**II.  Standard**

"[A]rbitration awards are entitled to a strong presumption

of correctness which can only be overcome in limited

circumstances . . . ." Jones v. Intarome Fragrance Corp., No.

04-5625, 2007 WL 1296656, at *3 (D.N.J. Apr. 27, 2007). By

statute, an award will be vacated:

> (1)   where the award was procured by corruption, fraud or
>       undue means;
>
> (2)   where there was evident partiality or corruption in the
>       arbitrators, or either of them;

6

(3)   where the arbitrators were guilty of misconduct in
      refusing to postpone the hearing, upon sufficient cause
      shown, or in refusing to hear evidence pertinent and
      material to the controversy; or of any other
      misbehavior by which the rights of any party may have
      been prejudiced; or

(4)   where the arbitrators exceeded their powers, or so
      imperfectly executed them that a mutual, final, and
      definite award upon the subject matter submitted was
      not made.

9 U.S.C. § 10.

In addition to the four statutory bases for vacating an

arbitration award, there are three common law grounds for

vacatur:  1) an arbitrator's manifest disregard for the law, as

opposed to a legal error; 2) if the award is completely

irrational; and 3) if the award is contrary to public policy.

Jones, 2007 WL 1296656 at *3; On Time Staffing, LLC v. Coast To

Coast Installations, Inc., No. 09-4158, 2009 WL 3260642, at *1 n.

2 (D.N.J. Oct. 8, 2009).

Absent allegations of fraud, partiality, or misconduct, or

public policy concerns, the Third Circuit has distilled the

remaining grounds for vacatur into the following test:

> A district court may determine only whether or not an
> arbitrator's award 'draws its essence' from the parties'
> collective bargaining agreement . . . .  Once a court is
> satisfied that an arbitrator's award draws its essence from
> a collective bargaining agreement, it is without
> jurisdiction to consider the award further.  An award draws
> its essence from a collective bargaining agreement if its
> interpretation can *in any rational way* be derived from the
> agreement, viewed in light of its language, its context, and
> any other indicia of the parties' intention.  As a general

7

> rule, we must enforce an arbitration award if it was based
> on an arguable interpretation and/or application of the
> collective bargaining agreement, and may only vacate it if
> there is no support in the record for its determination or
> if it reflects manifest disregard of the agreement, totally
> unsupported by principles of contract construction.

<u>Brentwood Med. Assocs. v. United Mine Workers of Am.</u>, 396 F.3d

237, 240-41 (3d Cir. 2005)(citations omitted)(emphasis in

original).  Importantly, it is **not** the Court's role "to correct

factual or legal errors made by an arbitrator."  <u>Id.</u> at 240.

## III. Analysis

Rite Aid does not allege fraud, corruption, or misconduct on

the part of the arbitrator, or raise any public policy concern in

its motion for vacatur.  Rather, Rite Aid contends that the

Arbitrator failed to draw from the essence of the 2005 CBA and

exceeded his power by amending or altering the 2005 CBA.  Rite

Aid claims that the Arbitrator failed to draw from the essence of

the 2005 CBA because:

(1) the recognition provision contained in all three CBAs,
    on its face, reserved to Rite Aid the absolute
    discretion, and not the obligation, to choose whether
    to recognize the Union via card check, and Rite Aid
    never had any obligation to allow card check;

(2) the arbitrator's decision improperly considered
    extrinsic evidence – the "historical decision to
    voluntarily recognize the Union" – in finding
    otherwise; and

(3) even if Rite Aid at one point had an obligation under
    the Card Check Agreement, any such obligation was
    superseded by the 2002 and 2005 CBAs.

Finally, Rite Aid claims that the Arbitrator exceeded his authority under the 2005 CBA by amending the 2005 CBA to impose an obligation by Rite Aid to accept card check.  For three reasons, this Court cannot say that the Arbitrator failed to draw from the essence of the 2005 CBA or exceeded his authority under it.

> 1.   Rite Aid's Motion Improperly Seeks Review Of Alleged
>      Legal Errors.

First, while Rite Aid's arguments are cloaked in the cover of proper arguments as to the 2005 CBA's "essence" and the Arbitrator's authority, laid bare they really amount to a claim of legal error on the part of the Arbitrator.  Rite Aid does <u>not</u> take issue with the existence of the Card Check Agreement, which was stipulated to by the parties.  Rite Aid's real complaint is to the Arbitrator's legal conclusion that the Card Check Agreement amended the 2005 CBA.

It is not this Court's role to correct legal error by the Arbitrator.  <u>Brentwood Med. Assoc.</u>, 396 F.3d at 240.  If this admonition is to have any meaning, a finding that an award fails to draw from the essence of a CBA based on either a failure to look to the CBA's plain language or because the award rests on consideration of "improper" extrinsic evidence, as Rite Aid alleges, must be reserved for highly limited circumstances.  It is proper to vacate on these bases only when it can be readily determined that, in the face of clear and unambiguous CBA

9

language, the award invented, from whole cloth, new or inconsistent obligations based on an arbitrator's sense of fairness or non-binding past practices. Pa. Power Co. v. Local Union No. 272, 276 F.3d 174, 181 (3d Cir. 2001)(holding that arbitrator's award was improper"personal brand of justice" where arbitrator overrode clear and specific terms of agreement by importing inapplicable anti-discrimination policy into employee benefit policy); Brentwood, 396 F.3d at 243 (holding that "arbitrator's quotation of language not present in the agreement" was improper, but even then finding that vacatur was unwarranted); CP Kelco US, Inc. v. Int'l Union of Operating Engineers, 381 F. App'x 808, 814 (10th Cir. 2010) (holding that it was improper to consider past practices where the CBA was unambiguous).

In this circumstance, a court may properly vacate an award because it is based on the arbitrator's clear consideration of a manifestly improper **source.**  Where, however, an arbitrator relies on evidence that is anything less than manifestly improper, his decision to use that evidence, and determinations based on it, veer towards essentially unreviewable legal decisions as to contract interpretation.  See Dauphin Precision Tool v. United Steel Workers of Am., 338 F. App'x 219, 222 (3d Cir. 2009) ("We do not review the merits of [an arbitration] decision or correct factual or legal errors.").

The Arbitrator's decision here falls in the latter category. The Award cannot be said to have relied on either notions of fairness, or non-binding past practices.  Rather, the Arbitrator found, based on testimony and the written stipulation of the parties, that a separate agreement - the Card Check Agreement - existed and amended the CBA.  This legal determination rested on several subsidiary legal findings, including: the implicit finding that it was proper to consider the oral agreement and that it was not parol evidence; the finding that the Card Check Agreement was a binding, enforceable agreement; and the finding that the 2005 CBA did not supersede the earlier Card Check Agreement.  Because Rite Aid's arguments relate to these **legal** decisions, and this Court does not review awards for simple legal error but only for manifest disregard for the law, which Rite Aid does not claim, Rite Aid's motion to vacate must be rejected. Major Leage Umpires Ass'n v. Am. Leauge of Prof'l Baseball Clubs, 357 F.3d 272, 289 (3d Cir. 2004)("In closing, we cannot help but note that, at their core, many of the claims raised by both sides in this litigation amount to little more than requests for judicial review of the merits of the Award. We reiterate that such review is inimical to the public policy underlying the limited role assigned to the federal courts in the area of arbitration.")

This does not mean the Court agrees with the Arbitrator's

11

legal conclusions.  Indeed, the Court finds Rite Aid's interpretation of the agreements at issue more persuasive. However, this Court's disagreement with the Arbitrator's construction - the construction of the agreements the parties bargained for - is not a proper basis for vacatur.  Pa. Power Co., 276 F.3d at 182 ("I find the majority's interpretation of the collective bargaining agreement more persuasive than the arbitrator's, but I cannot agree that the arbitrator's decision did not 'draw its essence from the contract' or that the arbitrator was not 'even arguably construing the contract.' . . . That the arbitrator probably misconstrued that provision is beside the point. The parties bargained for the arbitrator's construction of the agreement, and that is what they got.") (Alito, J., dissenting); see also Nat'l Postal Mail Handlers Union v. Am. Postal Workers Union, 589 F.3d 437, 439 (D.C.Cir. 2009).  Holding otherwise, as seen below, would create a backdoor to the type of legal second-guessing that our federal arbitration policy is designed to avoid.  Pa.Power, 276 F.3d at 178 ("In light of the federal policy encouraging arbitration awards, there is a strong presumption in their favor.").

    2.    The Arbitrator's Award Drew Its Essence From The CBA.

    Second, even taking Rite Aid's arguments at face value, the Arbitrator's Award properly drew from the essence of the CBA.

        A.    The Recognition Provision Was Ambiguous And The Arbitrator Did Not Fail To Draw From the the CBA's

Essence By Ignoring Its "Plain" Terms.

Rite Aid first argues that the Arbitrator improperly ignored the plain language of the 2005 CBA.  While Rite Aid is correct that an arbitrator fails to draw from the CBA's essence where he ignores plain and unambiguous language in the CBA (<u>Brentwood</u>, 396 F.3d at 246), all three CBAs contained some ambiguity as to Rite Aid's union recognition obligations.  The provisions all indicated that Rite Aid would accept "elections or other demonstration of the Union status acceptable to the Employer." Rite Aid contends that the provision entitled it to absolute discretion going forward as to the demonstrations it would accept.  However, an equally plausible construction of the provision is that Rite Aid must allow for other methods of demonstration that the parties understood to be "acceptable" to Rite Aid at the time of each CBAs' execution based on past practice or prior agreement.

   B. The Arbitrator Did Not Fail To Draw From The
     Agreement's Essence By Relying On Improper Parol
     Evidence; Consideration Of The Card Check
     Agreement Was Permissible And The Award
     Appropriately Looked To Both The Card Check
     Agreement And 2005 CBA In Drawing Out The Essence
     Of The Parties' Agreement.

Essentially rehashing its first argument, Rite Aid next contends that the Arbitrator improperly considered parol evidence of its "historical decision to voluntarily recognize the Union." In order for the parol evidence rule to apply, a written

13

agreement must be both unambiguous and integrated.  Starter Corp. v. Converse, Inc., 170 F.3d 286, 295 (2d Cir. 1999).  "A written contract is considered integrated when the parties intend it to constitute the complete and final expression of their agreement. When a contract lacks an express integration clause the district court must determine whether the parties intended their agreement to be an integrated contract by reading the writing in light of the surrounding circumstances."  Id. (citations and quotations omitted).  Therefore, even if the recognition provision were unambiguous, the Arbitrator could still properly consider the Card Check Agreement to determine where the 2005 CBA was an integrated agreement.

While admittedly creating a circular process, there is authority that a court may consider whether extrinsic evidence, including a contemporaneous oral agreement, signals an intent that a contract is not integrated, thus allowing the court to consider the same extrinsic evidence in its interpretation of the contract at issue.  Restatement 2nd of Contracts § 214 ("Agreements and negotiations prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish (a)that the writing is or is not an integrated agreement").

Because the 2005 CBA lacked an "integration clause," because both parties admit to the existence of the oral Card Check Agreement, and because the 1999 CBA, which contained the same

14

recognition provision, was negotiated roughly contemporaneously with the Card Check Agreement, the Arbitrator could have properly found that the parties did not intend the 2005 CBA to be integrated.  Merk v. Jewel Food Stores Div. of Jewel Cos., Inc., 945 F.2d 889, 893 (7th Cir. 1991)("We agree that the parties did not intend the written terms of the CBA to embody their entire agreement, for neither the Union nor Jewel denies the existence of an additional oral term to the contract-they only dispute its content."); Anderson v. Liles, 774 F. Supp. 2d 902, 908 (N.D. Ill. 2011)(finding that CBA was not integrated due to presence of oral side agreement and therefore that oral side agreement was not inadmissible parol evidence) (rev'd on reconsideration as to the contract's integration, but not as to the applicable reasoning).

From there, it naturally follows that it was permissible for the Arbitrator to resolve the impact of the Card Check Agreement on the underlying CBA.  Merk, 945 F.2d at 893 ("And once the CBA was found not integrated as a matter of law, it was proper for the jury to resolve the additional factual question of the precise terms of the oral promise. The jury ultimately believed Jewel's version of the story, concluding that the parties had orally agreed to reopen the economic terms of the contract in the event Cub Foods penetrated the Chicago market. The oral reopener, therefore, became an enforceable part of the CBA.")(but reversing

15

the jury's award on other grounds); <u>Starter Corp.</u>, 170 F.3d at
295 ("When an agreement is not integrated, the parol evidence
rule does not apply and extrinsic evidence of a separate oral
agreement can be considered.")[2]

Given that it was permissible for the Arbitrator to consider
the Card Check Agreement's impact on the 2005 CBA, the only
question that remains is whether his ultimate analysis properly
drew from the essence of the parties' agreement.  And where, as

---

[2]     Plaintiff's sole citation as to the inadmissibility of
oral agreements, as opposed to non-binding past
practice, is <u>Int'l Brotherhood of Teamsters, Local 513
v. Comair, Inc.</u>, No. 2008-219, 2010 U.S. Dist. Lexis
21123, *12 (E.D.Ky. Mar. 9, 2010) (holding that an
"arbitrator or court has no authority to consult
extrinsic evidence such as alleged oral agreements").
That case, however, dealt with a provision that the
arbitrator himself found "plain on its face" and in
which the arbitrator's award considered the
"impractical consequences" of a strict application of
the provision at issue.  There are no similar findings
here.  To the extent <u>Int'l Brotherhood</u> otherwise holds
to the contrary, such an interpretation would
critically undermine the well-established rule that a
"collective bargaining agreement may be partly or
wholly oral as well as partly or wholly in writing and
a written collective bargaining agreement may be orally
modified."   <u>McQuestion v. N.J. Transit Rail
Operations., Inc.</u>, 30 F.3d 388, 393 (3d Cir. 1994)
(citing Fifth Circuit case for this proposition); <u>Merk</u>,
945 F.2d at 901 ("The Supreme Court has said repeatedly
that labor relations require more flexibility than the
common law allows — not, as my colleagues hold, more
formality. . . . Flexibility entails giving labor and
management the option of having a fully integrated
agreement, of banning oral side agreements, as well as
the option of coming to partially-written,
partially-oral understandings.") (Easterbrook, J.,
dissenting).

here, a valid side agreement exists alongside the CBA, it is
proper for the Court to review the side agreement in conjunction
with the CBA, in assessing whether the Award drew from the
contract's essence.  <u>Keebler Co. v. Milk Drivers and Dairy Emps.</u>
<u>Union</u>, 80 F.3d 284, 288 (8th Cir. 1996); <u>Int'l Union v. Dana</u>
<u>Corp.</u>, 278 F.3d 548, 557-58 (6th Cir. 2002) (holding that the
arbitrator's award drew its essence from the CBA where it
reasonably construed the terms of side letter agreement that a
corporation would maintain **neutrality**); <u>Case-Hoyt Corp. v.</u>
<u>Graphic Commc'ns Int'l Union Local 503</u>, 960 F. Supp. 32, 37
(W.D.N.Y. 1997) ("Accordingly, the arbitrator's decision with
respect to Strader's grievance draws its essence from the side-
letter agreement and must be confirmed.")(aff'd, 159 F.3d 1345).
Because the Arbitrator's interpretation of the Card Check and
2005 CBA was rationally construed from these two agreements, the
Arbitrator drew from their essence, and this Court will not
vacate the Award on this basis.

      C.    The Arbitrators' Finding That The Card Check
            Agreement Survived The 2005 CBA Properly Drew From
            The Agreements' Essence.

    Rite Aid's third argument is that the Card Check Agreement
did not amend the 2005 CBA.  Review of an arbitrator's decision
as to whether a component of a CBA survives its expiration and
the adoption of a subsequent CBA "is very narrow and deferential"
and essentially reviewed solely for rationality."  <u>Accuride Erie,</u>

L.P. v. Int'l Union, Auto. Aerospace & Agric. Implement Workers
of Am., 257 F. App'x 574, 579 (3d Cir. 2007).  "[P]arties to
collective bargaining agreement may provide for rights that
survive beyond expiration of agreement."  Int'l Union v. Skinner
Engine Co., 188 F.3d 130, 138 (3d Cir. 1999).

Here, the absence of any integration clause in the 2005 CBA,
the ease with which one could have been written, Rite Aid's
demand for Union member pharmacy utilization rates, and Rite
Aid's history of card check recognition, though mixed, could all
rationally support the Arbitrator's finding that the Card Check
Agreement survived the adoption of the 2005 CBA.  Id. (finding
the reverse because of an integration clause, the lack of any
mention of the term at issue in the more recent agreement, and
the ease with which such mention could have been made).[3]  Indeed,
the Arbitrator  appears to have relied on some of these facts in
his Award.  ("This amendment to the collective bargaining

---

[3]     Rite Aid relies almost entirely on Beverage Indus.
Local No. 744 Health and Welfare Fund v. Quality Beers
Ltd. P'ship, 58 F. Supp. 2d 910 (N.D. Ill. 1999), in
support of this argument.  That decision, though
factually analogous, is inapposite in three key
respects.  In Beverage, the court, directly reviewing a
CBA de novo, rejected consideration of a side agreement
because it found both that the CBA language at issue
was unambiguous and that the CBA contained an
integration clause, making the CBA an integrated
agreement and the side agreement inadmissible parol
evidence.  Id. at 915-16.  Here, in contrast, the Court
is reviewing the decision of an arbitrator interpreting
a CBA that lacked a clear integration clause and with
ambiguous language.

agreement was then confirmed by a consistent, mutually-recognize practice for a period of three years . . . .  It was not the Union's obligation to propose a change . . . .  There is no evidence in the record that [Rite Aid] made any [attempt to change the CBA.]").

     As part of this argument, Rite Aid also argues that the Arbitrator's decision improperly infringed upon its right to insist on NLRB elections because employers waive that right only when they enter into a "clear and unequivocal agreement to do so" particularly where, as here, the waiver in question is indefinite.  While the Arbitrator did not spell out his reasoning as to waiver - and was not required to (Exxon Shipping CO. v. Exxon Seamen's Union, 73 F.3d 1287, 1297 (3d Cir. 1996) ("Arbitrators have no obligation to explain their reason for an award or even to write an opinion unless the contract so requires.")(quotation and citation omitted)) - he could have rationally found, based on the parties' oral agreement, the Memorandum, and Rite Aid's recognition of card check following the agreement, that the Card Check Agreement represented a clear and unequivocal waiver.

          D.   The Arbitrator Did Not Exceed His Authority By Amending
               The 2005 CBA.

     Rite Aid's final argument is that the Arbitrator exceeded his authority by amending the 2005 CBA.  This Court has already ruled that it was within the Arbitrator's authority to look to

the Card Check Agreement in drawing out the essence of the contract, and therefore rejects this argument.

     3.   <u>The Card Check Agreement Was Independently Arbitrable</u>.

Third, this Court will not vacate the Award because the Card Check Agreement was itself independently arbitrable.  As the Union points out in its briefing, the Third Circuit takes a broad view of arbitrability, holding that a dispute as to a side agreement is arbitrable if "the subject matter of the side agreement is within the scope of the arbitration clause of the CBA." <u>Inlandboatmens Union of the Pac. v. Dutra Grp.</u>, 279 F.3d 1075, 1080 (9th Cir. 2002)(citing to Third Circuit decision).

The 2005 CBA, under which the arbitration was instituted, broadly calls for arbitration of all grievances or disputes "arising during the term of this Agreement concerning interpretation or application of the provisions of the Agreement." The Card Check Agreement dealt with Rite Aid's union recognition procedure, a subject that dovetailed with interpretation/application of the CBA's union recognition provision, and therefore within the scope of the CBA arbitration provision, and arbitrable.  <u>Inlandboatmens</u>, 279 F.3d at 1080 ("Here, the arbitration clause of the CBA is reasonably broad, and covers '[a]ny dispute concerning the interpretation or any other dispute between the parties hereto regarding wages, working conditions, or any other matters referred to in this

Agreement....' The subject matter of the side agreement that is in dispute here-Dutra's subcontracting practices-is a matter explicitly referred to in the written collective bargaining agreement, and thus clearly falls within the purview of the arbitration clause.").

Because the Card Check Agreement was itself independently arbitrable, its enforceability was a matter for the Arbitrator, not this Court, to decide. <u>Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH</u>, 585 F.2d 39, 46 (3d Cir. 1978) (holding that alleged oral agreement was arbitrable and that it was for arbitrator alone to decide all disputes concerning alleged oral agreement, since the oral agreement was within the broad scope of the written agreement's arbitration clause); <u>Slye v. Cent. States Se. and Sw. Areas Health and Welfare Fund</u>, 956 F. Supp. 1357, 1365 (S.D. Oh. 1997)(enforceability of alleged side agreement, which defendants claimed was "invalid" because of the parol evidence rule and superseded by a subsequent CBA, was matter for arbitrator to decide).

## IV.  CONCLUSION

For all the foregoing reasons, this Court DENIES Rite Aid's motion and GRANTS the Union's motion.

Dated: November 28, 2011                      s/Renée Marie Bumb
                                              RENÉE MARIE BUMB
                                              UNITED STATES DISTRICT JUDGE